UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LISA HILLARD | CIVIL ACTION |
| VERSUS | NO: 13-200 |
| BANKERS SPECIALTY INSURANCE COMPANY | SECTION: "S" (1) |

ORDER AND REASONS

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #29) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Witness and Exhibit List (Doc. #33) is **DENIED**.

BACKGROUND

This matter is before the court on a motion for summary judgment filed by plaintiff, Lisa Hillard, and a motion to strike Hillard's witness and exhibit list filed by defendant, Bankers Specialty Insurance Company.

In 2012, Hillard owned a home in LaPlace, Louisiana that was insured against flood risks by Bankers, acting as Write-Your-Own Program Carrier participating in the United States Government's National Flood Insurance Program pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, et seq. The policy provided coverage in the amount of $177,000 for building, and $34,800 for contents.

On August 29, 2012, Hillard's home flooded as a result of Hurricane Isaac, and she made a claim under the policy. After an adjustor inspected the property, Bankers paid Hillard $50,087.54 under the building coverage, and $20,348.26 under the contents coverage.

Hillard hired Kevin Manale to inspect the property on her behalf. He estimated her building damage to be $121,682.72, and her lost contents to be $55,406. Hillard made a demand to Bankers for the difference between what was paid and Manale's estimates within the policy limits.

Bankers hired John Crawford to readjust the building loss. Crawford estimated the building damage to be $71,500.23.

On February 1, 2013, Hillard filed this suit seeking additional payments under her flood insurance policy. Particularly, Hillard seeks payment for replacing the builder's board between the brick veneer and studs of her house. Manale's damage estimate includes removing the brick veneer to and replacing the board. Manale did not do environmental testing on the builder's board to determine if it was contaminated. After the deadline for submitting expert reports passed, Hillard sought a continuance of the deadlines and trial to obtain environmental testing of the builder's board by and a report from Bill Driskill. The court denied the motion. Thereafter, plaintiff filed an untimely witness list seeking to add Driskill as a fact witness.

## ANALYSIS

**I.   Hillard's Motion for Summary Judgment (Doc. #29)**

   **A.  Legal Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." <u>Amburgey v. Corhart Refractories Corp.</u>, 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the

existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### B. Hillard's Motion for Summary Judgment

Hillard filed this motion for summary judgment seeking payment of $21,412.69, the difference between what Bankers paid on her claim ($50,087.54) and Crawford's building damage estimate ($71,500.23). Hillard argues that this amount is due as "undisputed."

Bankers argues that Crawford was hired for the purpose of this litigation, and his estimate is not binding on Bankers because it has not agreed to pay Hillard additional amounts based on that estimate. Bankers also argues that Hillard is not entitled to additional payments under the terms of the policy because she repaired the damage for less than the amount she already received from Bankers. The flood insurance policy provides that the insured will be paid for the lesser of: (1) the building limit of liability; (2) the replacement cost of that part of the dwelling damaged, with materials of like kind and quality for like use; or, (3) the necessary amount actually spent to repair or replace the damaged part of the dwelling for like use. See 44 C.F.R. Pt. 61, App. A(1).

Bankers contends that Hillard's receipts show that she spent $46,742.63 to repair her home, which included upgrades to her countertops and shower that cost $5,593 more than the adjustor's estimates to replace those items with ones of like kind and quality. Bankers also contends that it

over-paid Hillard $1,120 for her garage door, because her wind insurer also paid for that damage. Thus, Hillard actually spent $41,120.52 ($46,742.63 minus $5,593 for upgrades and $1,120 for double recovery) to repair her home with materials of like kind and quality. Further, Bankers argues that it has already paid $7,114.69 for the remediation costs listed in the outstanding invoice from Emergency Services 24, Inc. in the amount of $19,666.95, and that the invoice contains $5,405.38 of items that are not payable under the flood insurance policy. Accordingly, Bankers contends that when the remaining $7,146.88 of the Emergency Services 24, Inc. invoice is added to the repair cost of $41,120.52, Hillard spent $48,167.40 to repair her house, which is less than the $50,087.54 Bankers paid her for building damage.

Pursuant to the terms of the flood insurance policy and the evidence regarding what Hillard was paid under the policy and what she spent to repair her house, she is not clearly entitled to $21,412.69, the difference between what Bankers paid on her claim ($50,087.54) and Crawford's building damage estimate ($71,500.23). The evidence before the court at this time demonstrates that Hillard paid less to repair her house than the amount Banker's paid her for the damage, and the policy caps recovery at "the necessary amount actually spent to repair or replace the damaged part of the dwelling for like use." Hillard contends that the repairs were not completely of like kind and quality and there is remaining dispute regarding the builder's board. Therefore, there are disputed issues of material fact, and Hillard's motion for summary judgment is DENIED.

## II.     Banker's Motion to Strike Plaintiff's Witness and Exhibit List

Bankers seeks to strike plaintiff's untimely witness and exhibit list adding Driskill as a fact witness. Bankers argues that the witness list was filed untimely without leave of court, and that the

court denied plaintiff's motion to continue the trial to obtain an expert opinion from Driskill. Banker's argues that permitting Driskill to testify would be highly prejudicial.

At the pretrial conference in this matter, this court ordered plaintiff to produce Driskill's report to defense counsel.  Thereafter, defense counsel sought and was granted a continuance of the trial in this matter to depose Driskill and obtain its own expert to rebut Driskill's testimony and opinions.  The continuance of the trial alleviates any alleged prejudice to Bankers.  Therefore, Bankers' motion to strike is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #29) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Witness and Exhibit List (Doc. #33) is **DENIED**.

New Orleans, Louisiana, this   6th   day of November, 2013.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**